IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3173-F

| | |
|---|---|
| LAVERN RAY IRWIN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RICHARD O. BROADWELL, III, *et al.*, )<br>)<br>Defendants. )<br>)<br>) | ORDER |

This matter comes before the court on the motion [D.E. # 32] of defendants Faye Daniels and Anthony Florence for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the following reasons, the court grants the motion and dismisses plaintiff's claims against Daniels and Florence.

### STATEMENT OF THE CASE

On September 9, 2011, plaintiff, an inmate in the custody of the State of North Carolina, filed the instant complaint pursuant to 42 U.S.C. § 1983, alleging that defendants, the Superintendent and Assistant Superintendent, respectively, of Pamlico Correctional Institution, were deliberately indifferent to his serious medical needs while he was incarcerated at Pamlico during portions of 2010 and 2011, in violation of his rights under the Eighth Amendment to the Constitution.[1] Compl. [D.E.

---

[1] Plaintiff also sued Dr. Richard O. Broadwell, III, alleging deliberate indifference. The court previously denied Broadwell's motion to dismiss, and he has since filed a separate motion for
(continued...)

# 1] 3-4. Specifically, plaintiff alleged that Dr. Broadwell was deliberately indifferent to his serious medical needs concerning two separate injuries he sustained approximately a year apart in 2010 and 2011, and that defendants Daniels and Florence "were aware of Dr. Broadwell's deliberate indifference" but failed to remedy his conduct or respond appropriately to plaintiff's complaints. Id. at 4. Plaintiff seeks "compensatory, punitive, and nominal damages." Id. at 4.

On December 19, 2011, the court entered an order [D.E. # 5] on frivolity review of the complaint pursuant to 28 U.S.C. § 1915(e). The court ordered that plaintiff's claims of deliberate indifference would be allowed to proceed. On April 19, 2012, defendants filed their answer [D.E. # 18] to the complaint. On June 29, 2012, defendants filed the instant motion for summary judgment [D.E. # 32], as well as a memorandum [D.E. # 33] with supporting affidavits and exhibits. Defendants contend that they are entitled to summary judgment because "Plaintiff has failed to state a valid § 1983 claim against Defendants Daniels and Florence because these Defendants did not violate Plaintiff's constitutional rights[,]" and because "the doctrines of sovereign and qualified immunities shield them from claims for monetary damages." Defs.' Supp. Mem. [D.E. # 33] 6. On July 9, 2012, plaintiff filed a document styled as "Plaintiff's Motion for Rule 56(f) Denial or Continuance" [D.E. # 36], which included his "Declaration in Support of Rule 56(f) Motion of Lavern Ray Irwin." In this document, plaintiff describes his difficulty in responding to defendants' motion for summary judgment due to his lack of access to certain materials and defendants' failure to provide them in discovery. On July 18, 2012, plaintiff filed his "Response to Defendants Daniels' and Florence's Motion for Summary Judgment Rule 56 Fed. R. Civ. P. Local Rule 56.1" [D.E. # 37],

---

[1](...continued)
summary judgment [D.E. # 52], which the court will address at a later date.

along with supporting exhibits. Plaintiff also separately filed a lengthy "Affidavit of Lavern Ray Irwin in Opposition to Defendant's Motion for Summary Judgment" [D.E. # 38]. On August 17, 2012, plaintiff filed a motion to compel [D.E. # 41] defendants to respond to certain of his discovery requests. On January 16, 2013, the court entered an order [D.E. # 46] instructing defendants to respond to the motion to compel. On January 28, 2013, defendants filed their response [D.E. # 49]. These matters are now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). A "material" fact is identified by the substantive law, and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party may not simply rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but instead "must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis in original and quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a court views the facts and reasonable inferences drawn from the parties' submissions in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.

3

Anderson, 477 U.S. at 249-250 (citations omitted) ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); id. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ."). "Conclusory or speculative allegations do not suffice" to demonstrate a genuine issue of material fact. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002). Likewise, a court should not find the existence of a genuine issue of material fact based only upon the uncorroborated and self-serving testimony or assertions of a party. See Harris v. Home Sales Co., 2012 WL 6217613, *8 (4th Cir. Dec. 14, 2012) (citing Williams v. Giant Food Inc., 370 F.3d 423, 433 (4th Cir. 2004) (unpublished decision).

## STATEMENT OF THE FACTS

The undisputed facts, viewed in the light most favorable to plaintiff, are as follows. At all times relevant to this action plaintiff was an inmate in the custody of the North Carolina Department of Corrections and was incarcerated at Pamlico Correctional Institution (PCI) and, later, Eastern Correctional Institution (ECI). Defendant Daniels is employed as the Superintendent IV at PCI. Defendant Florence is employed as an Assistant Superintendent for Programs at PCI and is "responsible for ensuring qualified staff are present, there is a designated area for treatment and offices for staff, an orientation of medical services are in place for the inmates, hours of operation are adequate, and that staff scheduling is adequate." Florence Aff. [D.E. # 33-2] ¶ 5.

Plaintiff injured his right shoulder/upper arm area while playing handball on or around February 19, 2010. Plaintiff did not declare a medical emergency at the time of the injury. On February 21, 2010, he submitted a sick-call request for medical attention regarding the injury. Plaintiff saw a nurse on March 1, 2010, and was given pain medication and restricted from sports

4

activities for six weeks. On March 4 or 5, 2010,[2] plaintiff saw Dr. Broadwell. Dr. Broadwell diagnosed a "partial rupture proximal [right] biceps tendon" and prescribed additional pain medication. Plaintiff disagreed with Dr. Broadwell's diagnosis and submitted another sick-call request on March 18, 2010. On March 24, 2010, plaintiff saw the nurse and requested that Dr. Broadwell reevaluate the injury. The nurse agreed to advise Dr. Broadwell of plaintiff's concerns. Plaintiff states that he wrote Dr. Paula Smith, "the Chief of Health Services" for the then North Carolina Department of Corrections, "requesting intervention" on April 5, 2010, and that he filed another sick-call request on April 7, 2010. Irwin Aff. [D.E. # 38] at ¶¶ 34-36. On April 12, 2010, plaintiff submitted another sick-call request in which he complained that his injury had not healed and requested to see a specialist. On April 15, 2010, plaintiff again saw Dr. Broadwell, who agreed to refer plaintiff to a specialist. On May 14, 2010, plaintiff saw an orthopaedic specialist outside the prison. The physician diagnosed a right old biceps proximal tear, but did not recommend surgery.[3]

On February 9, 2011, plaintiff injured his left shoulder while working at his job in the upholstery shop at Pamlico. Plaintiff reported to the medical department that day, was examined, was given pain medication, and was offered leave from work, which he admits he declined. On February 16, 2011, plaintiff submitted a sick-call request in which he complained about pain and lack of mobility in his left arm and shoulder after the injury. Plaintiff was seen by the nurse that day, who provided him with ibuprofen and an analgesic balm. On February 28, 2011, plaintiff submitted

---

[2] Plaintiff states that his first visit with Dr. Broadwell concerning this injury occurred on March 4, 2010, see Irwin Aff. [D.E. # 38] at ¶ 14, while some medical records indicate the visit occurred on March 5th.

[3] Plaintiff asserts that the specialist did not recommend surgery because the injury was too old and that it had taken too long for plaintiff to see the specialist to permit surgery as a viable option. Irwin Aff. [D.E. # 38] at ¶¶ 53-57.

5

another sick-call request in which he again complained of continuing pain. Plaintiff was seen by the nurse on March 2, 2011, who provided him with more ibuprofen pursuant to protocols and advised that he would tell Dr. Broadwell of plaintiff's injury and request for additional ibuprofen.[4] On March 17, 2011, plaintiff submitted another sick-call request, again complaining about pain after the injury and requesting an MRI.[5] On March 18, 2011, plaintiff saw the nurse and complained about feeling lethargic and continued shoulder pain. The nurse advised plaintiff to continue with a prescribed Motrin regimen and place a follow-up sick-call if his condition worsened. On April 7, 2011, plaintiff submitted another sick-call request in which he complained that he was receiving no "treatment or testing" for his hypertension or shoulder injury.

On April 11, 2011, plaintiff wrote a letter to defendant Daniels, supposedly copied to defendant Florence, in which he complained that he had been in constant pain since his injury on February 9, 2011. He described his efforts to obtain treatment through his sick-call requests and complained that he had not seen Dr. Broadwell regarding the injury, had not been referred to a specialist, and had not been given an X-ray or MRI. April 11, 2011, Letter from Irwin to Daniels, ex. A to Daniels Aff. [D.E. # 33-1]. Plaintiff accused Dr. Broadwell of ignoring him due to their "history" stemming from plaintiff's injury the previous year and his subsequent refusal to submit to a yearly physical examination by Dr. Broadwell. Plaintiff closed the letter with a request that Daniels send him "to a competent physician at another prison such as Eastern or Craven." Id. Daniels referred the matter to Pamlico's Nurse Supervisor, Keith Hull, who reported back to her on

---

[4] Plaintiff states that Nurse Hull provided 600mg of ibuprofen, up from 200mg, at this meeting. Irwin Aff. [D.E. # 38] at ¶ 85.

[5] Plaintiff also complained about "isolated systolic hypertension" and requested to have his "thyroid tested."

6

April 12, 2011. Nurse Hull briefly recounted the nature of plaintiff's various sick-call appointments and described the circumstances surrounding plaintiff's prior injury and Dr. Broadwell's response to that injury in 2010. On April 13, 2011, Daniels wrote to plaintiff, advising him of the medical department's response to her about his complaints. Daniels informed plaintiff that Dr. Broadwell advised that he would "schedule you to have your left shoulder pain evaluated[,]" and directed plaintiff to "advise if I may be of any further assistance to you." April 13, 2011, Letter from Daniels to Irwin, ex. C to Daniels Aff. [D.E. # 33-1].

Plaintiff again saw the nurse on April 14, 2011, in response to his April 7, 2011, sick-call request. He was referred to Dr. Broadwell. On April 24, 2011, plaintiff submitted another sick-call request in which he again complained of left shoulder pain and requested that he see a physician, obtain an X-ray or MRI and receive additional ibuprofen for pain. On April 27, 2011, plaintiff saw the nurse, who again referred plaintiff to Dr. Broadwell and agreed to request an increase in plaintiff's ibuprofen prescription. On May 3, 2011, plaintiff was transferred to Eastern Correctional Institution. Dr. Broadwell did not examine plaintiff between the time of his second shoulder injury and his transfer to Eastern, although he did prescribe increased pain medication for plaintiff during this period.

## DISCUSSION

Plaintiff essentially claims that defendants violated his constitutional rights because they were made aware of Dr. Broadwell's alleged deliberate indifference to his serious medical needs and failed to take appropriate action to ensure that he received proper medical care. Plaintiff's claim therefore falls under the Eighth Amendment's prohibition against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Plaintiff must show a "deliberate indifference to [his]

7

serious medical needs." Id. "[T]he need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective. Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999). There is both "a subjective and an objective component to showing a violation of the right." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008). As to the objective component, a "'serious . . . medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999)). As for the subjective component, deliberate indifference, the plaintiff must show that the defendant "'knows of and disregards' the risk posed by the serious medical needs of the inmate." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). "Deliberate indifference is a very high standard–a showing of mere negligence will not meet it." Grayson, 195 F.3d at 695. "First, *actual knowledge of the risk of harm* to the inmate is required. Beyond such knowledge, however, the officer must *also* have recognized that *his actions were insufficient* to mitigate the risk of harm to the inmate arising from his medical needs." Iko, 535 F.3d at 241 (emphasis in original) (quotation and citations omitted).

The court must first examine plaintiff's theory of defendants' liability for his injuries. Plaintiff does not, and could not, allege that defendants were responsible for misdiagnosing his first injury in 2010 and then refusing to refer him to a specialist until it was too late to repair the injury. Nor does plaintiff allege that defendants prevented him from seeing the specialist in a more expedient manner once Dr. Broadwell made the referral. Plaintiff also does not allege that defendants actively sought to prevent him from receiving Dr. Broadwell's attention more promptly after his second injury in 2011. Rather, it appears plaintiff's complaint is simply that he suffered

8

from Dr. Broadwell's alleged deliberate indifference on defendants' watch, and that he continued to do so even after he alerted them to the alleged problems with Dr. Broadwell. However, to the extent plaintiff's theory of liability is grounded merely in the doctrine of *respondeat superior*, it is unavailing. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). That is, even if the court indulges plaintiff and assumes the worst of Dr. Broadwell, defendants, as administrators of Pamlico, may be liable under § 1983 "in their individual capacities only for their personal wrongdoing or supervisory actions that violated constitutional norms." Clark v. Maryland Dept. of Public Safety and Corr. Servs., 316 F. App'x 279, 282 (4th Cir. 2009) (unpublished decision); Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) ("It is insufficient to show deliberate indifference to a serious medical need on the part of the subordinate physicians."). Thus, the court will assess whether plaintiff may avert summary judgment on his claims alleging either supervisory liability[6] or personal wrongdoing on the parts of Daniels and Florence.

---

[6] A necessary precept in this analysis is that defendants were indeed "supervisors" of Dr. Broadwell. According to Daniels' affidavit, at all times relevant to the complaint, Dr. Broadwell was a "contract employee" of the Department of Correction, not a line employee under her everyday direction at Pamlico. See Daniels Aff. [D.E. # 33-1] at ¶ 7; see also Answer of Def. Broadwell [D.E. # 15] at ¶ 3. Nevertheless, plaintiff cites to provisions of North Carolina's Division of Prisons Policy and Procedures Manual for the broad proposition that it is responsibility of the "Facility Head"–Daniels–"to provide an environment that ensures the appropriate delivery of health services[.]" See Pl.'s Resp. [D.E. # 37] 10. The Fourth Circuit has previously acknowledged that the ordinary division of labor in prisons requires that medical providers be allowed to carry out their duties with relative autonomy, and that, correspondingly, non-medical administrators "'will generally be justified in believing that the prisoner is in capable hands.'" Iko, 535 F.3d at 242 (quoting Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)). This is so because "it would be an unprecedented extension of the theory of supervisory liability" to hold a prison warden liable not only for "ensuring that [inmates] received prompt and unfettered medical care, but also with ensuring that their subordinates employed proper medical procedures–procedures learned during several years of medical school, internships, and residencies." Miltier, 896 F.2d at 854. Thus, although labeling Daniels and Florence "supervisors" of Dr. Broadwell perhaps unfairly connotes some degree of control over Dr. Broadwell's actions or judgment, the court will assume for purposes of this claim
(continued...)

9

I.  Supervisory Liability

The Fourth Circuit has described the doctrine of supervisory liability in § 1983 cases as follows:

> It is well settled that supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates. Such liability is not based on ordinary principles of *respondeat superior*, but rather is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care. In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:
>
>> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices [ ]; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Baynard v. Malone, 268 F.3d 228, 235 (4th Cir. 2001) (citations and footnote omitted).  The Fourth Circuit has also described how each element of the supervisory liability test may be proven.

> To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff.  Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.[ ]
>
> A plaintiff may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses. The plaintiff assumes a heavy burden of proof in establishing deliberate indifference because:

---

[6](...continued)
that defendants could be subject to supervisory liability for Dr. Broadwell's actions, at least insofar as it relates to Dr. Broadwell's alleged failure to promptly treat plaintiff if not his alleged failure to employ "proper medical procedures."

10

> [o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.
>
> Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff. This concept encompasses cause in fact and proximate cause. In Slakan[ v. Porter, 737 F.2d 368 (4th Cir.1984)], we noted that the "proof of causation may be direct . . . where the policy commands the injury of which the plaintiff complains ... [or] may be supplied by [the] tort principle that holds a person liable for the natural consequences of his actions." Slakan, 737 F.2d at 376.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations and footnote omitted).

As to the first prong, actual or constructive knowledge, plaintiff's showing with respect to his first injury is lacking. He only alleges that he placed a non-emergency sick-call request on February 22, 2010, and then placed follow-up sick-call requests on March 18, April 7,[7] and April 12 2010, after he had been examined and treated by Dr. Broadwell on March 4th or 5th. Irwin Aff. [D.E. # 38] ¶¶ 8, 14, 30, 36, & 37. Plaintiff also states that he mailed a letter requesting

---

[7] Plaintiff claims that his April 7, 2010, follow-up sick-call request was "ignored and never scheduled." Irwin Aff. [D.E. # 38] at ¶ 36. However, there is no evidence in the record, other than his own conclusory assertion, that he even filed a sick-call request on April 7, 2010. Despite providing copies of every other relevant sick-call request identified by plaintiff, no defendant has provided the court with a sick-call request from April 7, 2010. Moreover, although plaintiff has provided the court with many copies of his sick-call requests, he too has not provided one for April 7, 2010. It may be that plaintiff has simply misremembered or confused the details of his various filings. As an exhibit to his response in opposition to Dr. Broadwell's motion to dismiss, plaintiff did provide the court with a follow-up sick-call request which he submitted on April 7, 2011, concerning his second injury. See Ex. G to Pl.'s Resp. [D.E. # 23-1].

11

"intervention" to Dr. Paula Smith, "the Chief of Health Services," on April 5, and that he subsequently urged friends and relatives to contact Dr. Smith on his behalf. Id. at ¶¶ 34, 45-47.[8] Finally, plaintiff alleges that he spoke with defendant Florence in a hallway at Pamlico in March of 2010 and "informed him about how slowly treatment was coming." Id. at ¶ 104. He maintains that Florence "suggested that I see Defendant Broadwell." Id. at ¶ 105.

Plaintiff has failed to show how any of these notices could have constituted actual or constructive knowledge on the part of defendants that Dr. Broadwell "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury," and that such conduct was "widespread." First, plaintiff's various sick-call requests, even if they are construed as capable of conveying actual or constructive knowledge to Daniels and Florence, do not suffice. Plaintiff's February 21, 2010, sick-call was his first related to the injury and in it he simply states that he injured his arm, would like pain medication, and would like to see the physician. Plaintiff's March 18 follow-up sick-call request expresses plaintiff's opinion that his injury would not heal as Dr. Broadwell believed, as well as his concern that he not be required to pay the $5.00 sick-call fee when he has his anticipated follow-up visit with Dr. Broadwell. As noted above, there is no available record of plaintiff's purported follow-up sick-call request of April 7, 2010. Plaintiff's April 12, 2010, follow-up sick-call request simply described his injury, expressed ongoing pain, and requested to see a specialist. Dr. Broadwell saw plaintiff three days later and referred him to the specialist. Thus, there is simply nothing in the record of plaintiff's sick-call requests which could have provided defendants with the requisite knowledge that Dr. Broadwell "was engaged in [widespread] conduct

---

[8] Dr. Smith is not a party in this action, and plaintiff has made no allegation or showing that any notice given to her should be imputed to defendants Daniels and Florence for purposes of satisfying the first element of the supervisory liability test.

12

that posed a pervasive and unreasonable risk of constitutional injury."

Likewise, plaintiff's letter to the non-party Dr. Smith and solicitations of other similar communications to her on his behalf also cannot be treated as conveying the requisite knowledge to Daniels and Florence as those communications were expressly directed to only Dr. Smith.[9] Moreover, in plaintiff's purported conversation with Florence in a hallway in March, 2010, he states that he only advised Florence that treatment for his injury was proceeding slowly. Even plaintiff does not allege that he told Florence he was being ignored by Dr. Broadwell, or that he complained about his treatment in a manner that Florence should have been concerned that Dr. Broadwell "was engaged in [widespread] conduct that posed a pervasive and unreasonable risk of constitutional injury." Finally, plaintiff's filing of an administrative grievance on May 17, 2010, also could not have provided the requisite actual or constructive knowledge, as at most it simply complained of an isolated instance of alleged medical malpractice by Dr. Broadwell in misdiagnosing plaintiff's injury. See Ex. A to Pl.'s Resp. [D.E. # 37-1]. In short, as it pertains to his first injury, plaintiff's various sick-call requests, his communications and solicitation of communications to non-parties, his singular grievance, and his apparently casual and informal conversation with Florence were simply insufficient to provide actual or constructive knowledge to defendants that Dr. Broadwell was

---

[9] Plaintiff claims that he "sent letters to Superintendent Daniels, Assistant Superintendent Florence, Nurse Supervisor Hull, and DOC Medical Chief Paula Smith making certain that the administration had actual knowledge of his situation. (Irwin Opp. Ex. A, F, H)." Pl.'s Resp. [D.E. # 37]. Plaintiff does not indicate how many such letters were sent, and he does not describe their precise content. Exhibits A, F, H to plaintiff's response in opposition to Dr. Broadwell's motion to dismiss are, respectively, the April 5, 2010, letter to the non-party Dr. Smith, an April 1, 2010, "Inmate Request Form" directed to the non-party Keith Hull, and plaintiff's April 11, 2011, letter to Daniels seeking help for his second injury. There is no evidence in the record of any written communication from plaintiff to defendants other than the April 11, 2011, letter to Daniels which the court has previously described.

13

purportedly engaged in "widespread" conduct that posed a "pervasive and unreasonable risk of constitutional injury to the plaintiff." As such, plaintiff cannot satisfy the first element of a supervisory liability claim against defendants based upon his injury in 2010.

Plaintiff's showing on the first element as it relates to his second injury, however, is stronger. In addition to once again filing numerous sick-call requests concerning the second injury, plaintiff provided defendant Daniels, copied to Florence, with a direct, written statement on April 11, 2011, in which he described the futility of his sick-call visits in treating his pain and opined that Dr. Broadwell was ignoring him because of their "history." See Letter from Irwin to Daniels, ex. A to Daniels Aff. [D.E. # 33-1]. However, even if the court assumes that this letter provided defendants with the requisite knowledge of Dr. Broadwell's alleged deliberate indifference to satisfy the first element, plaintiff's claim still fails because, rather than ignoring plaintiff's complaint, Daniels undertook prompt, reasonable action to address the matter.

Once charged with knowledge of alleged widespread conduct by a subordinate which poses a pervasive and unreasonable risk of constitutional injury, a supervisor may be liable only if "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices." Baynard, 268 F.3d at 235. For example, a supervisor's "continued inaction" in the face of such widespread abuses demonstrates such deliberate indifference. Shaw, 12 F.3d at 799. In this case, after receiving plaintiff's first direct complaint to her that he was in pain and that Dr. Broadwell was "ignoring him," Daniels promptly investigated the matter. She obtained a statement from her nurse supervisor which detailed the medical department's recent interactions with plaintiff since his injury. She also obtained, and conveyed to plaintiff the following day, Dr. Broadwell's assurance that he would schedule plaintiff for a visit

14

concerning his left shoulder, and requested that plaintiff contact her again if he required further assistance. Although plaintiff apparently was transferred to another facility less than three weeks later,[10] before Dr. Broadwell was able to conduct this examination, it is evident that Daniels sought to reasonably respond to plaintiff's complaint. Plaintiff does not allege, and there is no evidence in the record to suggest, that Daniels so controlled or managed Dr. Broadwell's scheduling that she bears any responsibility for his failure to see plaintiff between her April 13 response and the transfer on May 3rd.[11]

While plaintiff complains that defendants could have done more to investigate his complaint, see Pl.'s Resp. [D.E. # 37] at ¶ 50, the question before the court is not what more could Daniels have done but, rather, were her actions constitutionally adequate? See, e.g., Baynard, 268 F.3d at 236 (citations omitted) ("Deliberate indifference is a very high standard–a showing of mere negligence will not meet it. Actions that in hindsight are 'unfortunate' or even 'imprudent' will not suffice. Indeed, a supervisory official who responds reasonably to a known risk is not deliberately indifferent even if the harm is not averted."). Again, after Daniels first received a complaint from plaintiff that he was in pain and was being ignored by the prison's physician, she responded by learning the particulars of his recent medical appointments, including that he had been prescribed pain medications and that the physician had also increased his pain medications, and securing the physician's assurance that he would schedule plaintiff for a visit. This response in no way evinces

---

[10] Plaintiff explicitly requested such a transfer in his letter to Daniels. See id. ("I am requesting that you send me to see a competent physician at another prison such as Eastern or Craven.").

[11] Nor is there any allegation by plaintiff or evidence in the record that he once again contacted Daniels after her response to request additional assistance, as she directed him to do in her response.

15

any "deliberate indifference or tacit authorization" of purported "widespread" abusive conduct by Dr. Broadwell. See Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010) (citations omitted) ("As a nonmedical administrator, Peterman was entitled to defer to the judgment of jail health professionals so long as he did not ignore Berry. The undisputed facts show that Peterman met this standard. He consulted with the medical staff, forwarded Berry's concern to the DOC, and timely responded to Berry's complaints. That he took no further action cannot be seen as deliberate indifference."); Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005) ("Perhaps it would be a different matter if Miller had ignored Greeno's complaints entirely, but we can see no deliberate indifference given that he investigated the complaints and referred them to the medical providers who could be expected to address Greeno's concerns."). Thus, plaintiff cannot satisfy the second element of the supervisory liability test.

In addition, plaintiff cannot satisfy the third element, causation, with respect to either of his claims of injury against these defendants. Plaintiff has not even alleged that purported inaction on the parts of Daniels and Florence caused the injuries he attributes to Dr. Broadwell's misdiagnosis and delay in referring him to a specialist. Likewise, plaintiff cannot show that alleged inaction on the part of defendants caused Dr. Broadwell to purportedly ignore plaintiff's complaints about his second injury. Indeed, as recounted above, the record indicates that once defendants were clearly made aware of plaintiff's complaints about his second injury, they reasonably investigated the matter. For all of these reasons, plaintiff cannot sustain his claims of deliberate indifference against defendants on a theory of supervisory liability.

II.     Personal Conduct

Defendants' personal conduct in this matter also will not sustain a claim of deliberate

16

indifference on the record before the court. There is no allegation in the complaint or summary judgment materials that defendants participated in any of the medical decisions which plaintiff contends caused him constitutional injury, or that defendants otherwise sought to prevent Dr. Broadwell from providing timely, effective treatment. Furthermore, as set out above, defendants reasonably responded to plaintiff's direct complaints that Dr. Broadwell was ignoring him. Provided that they reasonably sought to ensure that plaintiff was receiving adequate medical services, defendants, as nonmedical administrators of the prison, were entitled to reasonably rely upon Dr. Broadwell's and the medical department's exercise of their professional medical judgment. There is no dispute of material fact that defendants' personal conduct constituted deliberate indifference to plaintiff's serious medical needs. Iko, 535 F.3d at 241.

## CONCLUSION

For all of the foregoing reasons, defendants' motion for summary judgment [D.E. # 32] is GRANTED and plaintiff's claims against Daniels and Florence are DISMISSED and those defendants are dismissed as parties to this action. Because plaintiff's claims against Daniels and Florence are dismissed, his motion to compel discovery [D.E. # 41] from those defendants is moot and is therefore DENIED.

SO ORDERED. This the 27 day of March, 2013.

_James C. Fox_
JAMES C. FOX
Senior United States District Judge